STATE OF CONNECTICUT *v.* JONATHAN BRADLEY
(12942)

Landau, Schaller and Freedman, Js.

Argued March 20—decision released August 29, 1995

*Max F. Brunswick,* for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Michael A. Pepper,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4),[1] carrying a pistol without a permit in violation of General Statutes § 29-35,[2] and criminal possession of a firearm in violation of General Statutes § 53a-217 (a).[3] On appeal, the defendant claims that the trial court improperly (1) denied his request for a continuance to obtain new counsel, (2) denied his motion to set aside the verdict of guilty of carrying a pistol without a permit and criminal possession of a firearm because the state failed to prove the element of operability beyond a reasonable doubt, (3) denied his motion to set aside the verdict of guilty of carrying a pistol without a permit and criminal possession of a firearm because the verdict was inconsistent with the guilty verdict of robbery in the first degree pursuant to § 53a-134 (a) (4), and (4)

[1] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm, except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

[2] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

[3] General Statutes § 53a-217 provides in pertinent part: "(a) A person is guilty of criminal possession of a firearm or electronic defense weapon when he possesses a firearm or electronic defense weapon and has been convicted of . . . a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196b . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

denied his motion to dismiss the second part of the information due to the clerk's failure to notify him of its content before the trial began as required by Practice Book § 648. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On August 2, 1992, the defendant, wearing a face mask, approached a parking lot attendant at the Broadway Parking Lot in New Haven. The defendant pointed a silver colored handgun at the attendant, took approximately $60 and fled on foot. The attendant called the police. Officers patrolling the immediate vicinity observed the defendant running away. After a brief pursuit, the police apprehended the defendant who was hiding in a shed. The police recovered a black face mask and $66 but did not find the handgun.

Toneka Horne saw the defendant drop something as he fled from the police. She recovered the object, which was a silver colored .40 caliber semiautomatic pistol with a black handle. Horne sold the gun to a drug dealer and four days later, upon request by the police, retrieved it. The police tested the gun and found it to be operable. At trial, Horne positively identified the gun as the same one the defendant had dropped.

On August 18, 1992, the trial court appointed Attorney Michael Moscowitz as special public defender to represent the defendant. The case was set down for trial on July 22, 1993. On that date, two state's witnesses were unavailable and the court continued the start of the trial until August 4, 1993. The defendant then made an oral motion for the trial court to assign new legal counsel to replace Moscowitz and the court denied his motion.

On August 4, 1993, the day the trial was to begin, Attorney Max Brunswick appeared in court. He informed the court that the defendant's mother wanted to hire him to represent the defendant. Brunswick had

not yet filed an appearance.[4] Brunswick stated that he would do so only if the court granted the defendant a continuance until August 16 or 17. Brunswick told the court that he needed the continuance because he was scheduled to begin a civil trial that would last approximately one week, and that he needed time to prepare the defendant's case for trial. The court offered to delay jury selection for one day, but Brunswick refused. The court denied the continuance.

The state charged the defendant with two counts of robbery,[5] carrying a pistol without a permit and criminal possession of a firearm. On July 13, 1993, pursuant to Practice Book § 619, the state filed a part B information charging the defendant with being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a) and with being a persistent serious felony offender in violation of General Statutes § 53a-40 (b). Upon conviction, the defendant entered a plea of nolo contendere to the part B information. This plea was conditional on his right to appeal the denial of his motion to dismiss the part B information. See General Statutes § 54-94a; Practice Book § 4003. This appeal followed.

I

The defendant first claims that he was deprived of his constitutional right to be represented by counsel of his choice because the trial court improperly denied his request for a continuance to obtain new counsel on the

---

[4] The record does not reveal why the trial court allowed Brunswick to speak on the record for the defendant since he had not yet filed an appearance as required by Practice Book § 630. We presume, however, that the court relied on the waiver provision of that section: "Except by leave of the judicial authority, no attorney shall be permitted to appear in court or to be heard in behalf of a defendant until his appearance has been so entered. . . ."

[5] Although the defendant was initially charged with two counts of robbery in the first degree, namely § 53a-134 (a) (2) and § 53a-134 (a) (4), the jury was instructed that it could convict on only one of these counts. The jury acquitted the defendant of violating § 53a-134 (a) (2), and convicted him of violating § 53a-134 (a) (4).

day his trial was scheduled to begin.[6] He argues that the trial court acted unreasonably and arbitrarily in light of the information available to it in denying the continuance and, therefore, abused its discretion. We disagree.

Our review of a trial court's decision to grant or deny a continuance is limited to whether the court abused its discretion. *State* v. *Hamilton*, 228 Conn. 234, 239, 636 A.2d 760 (1994). An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary. Id., 240. Our assessment of the reasonableness of the trial court's exercise of discretion is limited to a consideration of those factors on the record known to the court at the time it rendered a decision. Id., 241–42. We must afford the trial court every reasonable presumption in favor of the proper exercise of its discretion. Id., 240.

The defendant makes two arguments to support his claim that the trial court acted unreasonably and arbitrarily when it denied his request for a continuance to obtain new counsel. He first argues that any inconvenience to the court in granting the continuance would have been minimal and therefore it should have been granted. He offers the following reasons in support of this argument: jury selection had not yet begun, backup cases were available, and the continuance was for a specified duration of only twelve or thirteen days. We find this argument unpersuasive.

The question of whether, and to what degree, a trial court is inconvenienced by a continuance can be answered only by the court itself. *In re Mongillo*, 190 Conn. 686, 691, 461 A.2d 1387 (1983). "Our judicial system

---

[6] Although the defendant asserts that he was deprived of his "constitutional right to counsel of his choice," he neither cites nor presents an analysis pursuant to the federal or Connecticut constitutions. We, therefore, decline to analyze any constitutional claims. We do, however, review this claim under an abuse of discretion analysis.

cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned." Id. Moreover, whether jury selection had begun is not determinative of whether the court's denial of the continuance was arbitrarily refused. Motions for continuance on the eve of trial are disfavored. See, e.g., *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993); *Sekou* v. *Warden*, 216 Conn. 678, 686, 583 A.2d 1277 (1990).

The defendant next argues that the court acted unreasonably in denying the continuance because he had a "specific, articulate objection" to Moscowitz' performance. In light of this information, he claims, the continuance should have been granted to allow him to obtain new counsel. The defendant also argues that Brunswick was "ready, willing and able" to replace Moscowitz.

Whether there was any merit to these claims regarding Moscowitz was for the trial court to decide. *State* v. *Watson*, 198 Conn. 598, 610, 504 A.2d 497 (1986). Prior to the start of jury selection, the court heard from the defendant and Moscowitz. Although the defendant claimed that he was not able to communicate effectively with Moscowitz, that Moscowitz never visited him, and that Moscowitz was unprepared, Moscowitz presented a different version of their relationship. Moscowitz told the court that he had visited the defendant in jail and had discussed the case with him on several occasions. The defendant also told the court that he had filed a grievance against Moscowitz. The court then attempted, unsuccessfully, to ascertain whether any grievance had actually been filed with the statewide grievance committee, and eventually denied the defendant's oral motion to terminate Moscowitz.[7] After a review of the court's

---

[7] Prior to the start of trial on August 4, 1993, the following colloquy took place:

inquiry into the defendant's objection to Moscowitz, we are unconvinced that the trial court was unreasonable or arbitrary in its decision not to terminate Moscowitz. Finally, the argument that the continuance should have been granted because Brunswick was "ready, willing and able" to represent the defendant is without substance. The record clearly shows that Brunswick had not yet filed an appearance and refused to do so unless the court granted the continuance.

For the previously stated reasons, the defendant has failed to establish that the trial court acted unreasonably or arbitrarily in denying his request for a continuance. Accordingly, we conclude that the trial court did not abuse its discretion.

## II

The defendant next claims that the trial court improperly denied his motion for judgment of acquittal and to set aside his conviction of carrying a pistol without a

"Moscowitz: I will indicate that Mr. Bradley this morning indicated to me that he did file a grievance against me. I have not seen the grievance itself.

"The Court: What do you mean he filed a grievance?

"Moscowitz: Well, he has indicated that.

"The Court: Where did he file it?

"Moscowitz: I'm not quite sure, Your Honor.

"The Court: What did he do with it? What is it?

"Moscowitz: He indicated that he sent it to statewide Hartford

"The Court: Statewide grievance committee?

"Moscowitz: That's correct, Your Honor. That is what he has indicated to me, I was just notified of it by him this morning.

"The Court: He is requesting the statewide grievance committee to take this preliminary action against you, is that what it is?

"Moscowitz: I haven't read it, so I don't know.

"The Court: Where is it?

"Moscowitz: I don't know.

"The Court: Have you got a copy of it?

"Moscowitz: I don't have a copy of it.

"The Court: Does anybody?

"The Defendant: Yes, I have a copy of it.

"Moscowitz: Mr. Bradley indicates he has a copy.

"Brunswick: He didn't bring it with him."

permit and criminal possession of a firearm. He argues that there was insufficient evidence presented at trial to prove beyond a reasonable doubt the element of operability, which is required for both crimes.

As a threshold matter, we note that the defendant incorrectly assumes that operability of a weapon is an element of the crime of carrying a pistol without a permit. To obtain a conviction under § 29-35, the prosecution need prove only that the accused (1) carried a pistol while outside a dwelling or place of business and (2) that he did not have a permit to do so. *State* v. *Delossantos*, 211 Conn. 258, 272–76, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Therefore, the defendant's claim of insufficient evidence to prove operability, as it pertains to his conviction of carrying a pistol without a permit, is without merit. The claim is appropriate, however, regarding his conviction for criminal possession of a firearm under § 53a-217.[8]

"In reviewing a jury verdict that is challenged on the ground of insufficient evidence, we employ a two part analysis. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. . . . The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994)." (Internal quotation marks omitted.) *State* v. *Garcia*, 37

---

[8] The term firearm as it applies to § 53a-217 is defined under § 53a-3 (19): " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded *from which a shot may be discharged.*" (Emphasis added.)

Conn. App. 619, 623–24, 657 A.2d 691 (1995). In reaching its verdict, the jury can draw reasonable and logical inferences from the facts proven and from other inferences drawn from the evidence presented. Our review is a fact based inquiry limited to a determination of whether the jury's inferences drawn were so unreasonable as to be unjustifiable. Id.

Restated, the issue raised in this claim is whether the jury could have drawn reasonable inferences from the evidence to enable it to conclude, beyond a reasonable doubt, that the gun that the defendant possessed was operable. The defendant correctly points out that the police did not obtain custody of the gun and test its operability until three days after the defendant allegedly possessed it. He argues that because the gun was in the possession of an unidentified drug dealer, the jury could not reasonably find it was operable at the time of the crime. The state contends that the defendant's convictions were based on reasonable inferences drawn from the evidence. We agree with the state.

The operability of a firearm can be proven either by circumstantial or direct evidence. *State* v. *Hopes*, 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). The evidence presented established that the gun was operable when it was tested by the police after it was retrieved by Horne. The guilty verdict implies that the jury drew an inference from that evidence and found that the gun was also operable at the time when the defendant possessed it. If we review the evidence in the light most favorable to sustaining the jury's finding of operability, we cannot conclude that the jury's inference was unsupported or unreasonable. The defendant contends that the same evidence could lead the jury to infer that the gun was inoperable when the defendant possessed it and that it was repaired before the police tested it. Our task on appeal is not to second guess the jury's findings of fact. *State* v. *Mejia*,

233 Conn. 215, 224, 658 A.2d 571 (1995). The jury must determine the facts by weighing the evidence presented at trial. *State* v. *Scales*, 38 Conn. App. 225, 229, 660 A.2d 860 (1995). We must construe the evidence in the light most favorable to sustaining the facts found by the jury, and then decide whether the cumulative effect of that evidence supports the conviction. *State* v. *Garcia*, supra, 37 Conn. App. 624.

We conclude that the evidence presented was sufficient to enable the jury reasonably to infer that the gun was operable at the time the defendant possessed it.

### III

The defendant next claims that the trial court improperly denied his motion to set aside the verdicts of guilty of carrying a pistol without a permit and criminal possession of a firearm. He argues that these verdicts are inconsistent with the verdict of guilty of robbery in the first degree in violation of § 53a-134 (a) (4).

He contends that in order for the jury to have found him guilty of carrying a pistol without a permit and criminal possession of a firearm, it had to have determined that the gun that he possessed was operable.[9] He further asserts that, in finding him guilty of robbery pursuant to § 53a-134 (a) (4), the jury necessarily found that the gun was inoperable. This is so, he claims, because the jury was instructed that it could convict on robbery pursuant to either § 53a-134 (a) (2) or § 53a-134 (a) (4), but not both. Because the jury chose to convict under the latter, we must necessarily infer that the jury found

---

[9] We first note that the defendant again incorrectly assumes that operability of a weapon is an element of the crime of carrying a pistol without a permit (see part II of this opinion). He is correct, however, in his contention that operability is an element of criminal possession of a firearm. We therefore limit our discussion to whether the verdict of guilty of criminal possession of a firearm is inconsistent with the guilty verdict of robbery in the first degree pursuant to § 53a-134 (a) (4).

that the gun was inoperable, in that operability is a necessary element of robbery pursuant to § 53a-134 (a) (2).[10]

The defendant argues that operability and inoperability are mutually exclusive elements and that the convictions cannot stand in light of the holding in *State* v. *King*, 216 Conn. 585, 593–94, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991). The state claims that the defendant has misapplied *King* and, further, that our law permits inconsistent verdicts. We agree.

In *King*, our Supreme Court held that jury verdicts convicting a defendant of two offenses each of which requires a finding of a mutually exclusive element for conviction must be set aside. Id. The defendant correctly acknowledges that operability is an essential element of criminal possession of a firearm. Therefore, for *King* to apply, inoperability must be an essential element of robbery pursuant to § 53a-134 (a) (4). Because inoperability is not an element of that crime, the holding of *King* does not apply.

Any remaining claim of inconsistent verdicts is controlled by well established law. "On several occasions, [the Supreme Court has] refused to reverse a verdict of guilty on one count where that verdict appeared to be inconsistent with a verdict of acquittal on another

---

[10] In his brief, the defendant claims that because robbery under § 53a-134 (a) (2) requires a finding that the defendant used an operable firearm, a jury verdict of not guilty means that the jury determined that the defendant possessed an inoperable firearm. He further claims that the fact that the jury chose to convict him of robbery under § 53a-134 (a) (4), which requires proof of operability, supports this reasoning. His logic is flawed for two reasons. First, an acquittal under § 53a-134 (a) (2) does not necessitate a finding that the defendant possessed an inoperable firearm. Second, a guilty verdict under § 53a-134 (a) (4) does not require proof of operability. A conviction can result whether the defendant possessed a gun. All that is required is that the defendant "displays or threatens the use of what he represents by his words or conduct to be a [gun]." General Statutes § 53a-134 (a) (4).

count. See *State* v. *Jackson*, 194 Conn. 241, 243–44, 478 A.2d 1018 (1984) (inconsistent verdicts on robbery charges arising out of same incident upheld) . . . ." *State* v. *Bailey*, 209 Conn. 322, 344, 551 A.2d 1206 (1988). "The law permits inconsistent verdicts because of the recognition that jury deliberations necessarily involve negotiation and compromise. *Steadman* v. *United States*, 358 A.2d 329, 332 (D.C. App. 1976)." *State* v. *Patterson*, 31 Conn. App. 278, 304–305, 624 A.2d 1146 (1993), rev'd on other grounds, 230 Conn. 385, 645 A.2d 535 (1994).

We conclude that the trial court properly allowed the convictions for carrying a pistol without a permit and criminal possession of a firearm to stand.

### IV

The defendant's final claim is that he is entitled to a dismissal on the part B information, charging him with being a persistent dangerous felony offender and a persistent serious felony offender, because the clerk failed to notify him prior to the start of trial of the contents of the part B information as required by Practice Book § 648. Section 648 provides: "Prior to the time the defendant enters a guilty plea or, if the defendant pleads not guilty, prior to the commencement of trial, the clerk shall notify the defendant, in the absence of the judicial authority, of the contents of the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file." The defendant argues that he was prejudiced by the clerk's failure to comply strictly with § 648 because he was deprived of the opportunity to voir dire the jurors as to all the charges brought against him.

In this case, the record reveals that the defendant had actual notice of the persistent felony offender charges contained in the part B information prior to the August

4, 1993, start of trial on the underlying charges. The state filed the part B information on July 13, 1993. The defendant's attorney received a copy of this information directly from the prosecutor on July 22, 1993. The state then filed an amended long form information on July 22, 1993. The defendant pleaded not guilty to the underlying charges on the first part and the clerk did not read the second part. On that date, the court informed the defendant on the record: "Of course, if there is a guilty verdict on these charges, there is a part B of this information that's been filed that would require a relatively brief proceeding following the guilty verdict." Later in that same proceeding, the court added: "On the other hand, if you are convicted, my rough estimate that if you are convicted on these charges and then you are also convicted of being a persistent dangerous felony offender and being a persistent serious felony offender, my rough estimate of the exposure you will have, I think it adds up to something in the area of forty-five years in prison, which is, you know, a rather substantial period of time." In summary, we are convinced that the defendant had actual notice of the part B information prior to the start of his trial and was therefore not prejudiced during jury voir dire.

We conclude that because the defendant had actual notice of the part B information, the clerk substantially complied with Practice Book § 648.

The judgment is affirmed.

In this opinion the other judges concurred.