STATE OF CONNECTICUT *v.* MARTY CALDERON
(AC 23499)

Schaller, Dranginis and DiPentima, Js.

Argued December 9, 2003—officially released April 6, 2004

*Marty Calderon*, pro se, the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The pro se defendant, Marty Calderon, appeals from the judgment of conviction, rendered after a jury trial, of violation of a protective order under General Statutes § 53a-223. On appeal, the defendant claims that the trial court improperly (1) violated her constitutional rights to the effective assistance of counsel,[1] (2) admitted hearsay into evidence, (3) denied her motion to order her daughter to undergo a competency evaluation prior to testifying, (4) violated her constitutional rights to confront and to cross-examine the witnesses against her, thereby denying her constitutional right to present an adequate defense, and (5) deprived her of her rights to subpoena witnesses and to enter

---

[1] The defendant claims a violation of her rights under both the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. "Because the defendant has not briefed [her] claim separately under the Connecticut constitution, we limit our review to the United States constitution. We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue. . . . Without a separately briefed and analyzed state constitutional claim, we deem abandoned the defendant's claim . . . ." (Internal quotation marks omitted.) *State* v. *Gonzalez*, 69 Conn. App. 649, 656 n.6, 796 A.2d 1225, cert. denied, 260 Conn. 937, 802 A.2d 91 (2002).

evidence in her defense. In her final claim, she contends that the state failed to give her adequate notice of the acts that constituted a violation of the protective order. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 3, 2001, the court, *Alexander, J.*, issued a family violence protective order requiring the defendant to have "no contact" with her daughter.[2] On May 31, 2001, the daughter received by mail a document concerning the defendant's appeal from a Probate Court order. The written protective order, in contrast to the court's verbal order, did not explicitly forbid the defendant from mailing something to her daughter. The defendant had mailed the probate document in an envelope addressed to her daughter. The envelope bore the defendant's name and return address. The defendant's daughter contacted the police. Officer Brendon Hosey of the New Haven police department investigated the daughter's complaint and retrieved the envelope and its contents. After confirming that a protective order had been issued against the defendant, Hosey obtained a warrant for her arrest. The defendant subsequently was arrested. After the verdict of guilty, the court sentenced the defendant to one year imprisonment, execution suspended, with two years of probation. This appeal followed.

I

The defendant's first claim is that her right to the effective assistance of counsel was violated when the

---

[2] The court explained the terms of the protective order to the defendant in relevant part:

"The Court: . . . [W]ith respect to [your daughter], it is the order of the court that you not restrain, threaten, harass, assault, molest or sexually assault that individual. Do not go to [your daughter's home]. It also indicates that you may not go to her place of employment . . . . No contact in person, by phone, by letter or by sending anyone on your behalf. Do you understand this order . . . yes or no?

"[The Defendant]: Yes, Your Honor. . . ."

court denied her motion for a continuance to obtain new counsel on the morning of trial.[3] We disagree.

The following additional facts are relevant to our resolution of that issue. The defendant retained counsel, William C. Rivera, in September, 2001. Before the start of jury selection on September 5, 2002, the defendant requested a continuance so that she could obtain new counsel. The defendant told the court that "communications [with her attorney] have broken down." She represented to the court that she had had limited contact with Rivera and that he was unavailable to review her case with her prior to the start of trial. In response, the court stated: "[Y]ou are absolutely entitled to go out and hire a new attorney; that's your right and your privilege. . . . [B]ut this trial is not going to be continued or suspended or delayed. In order for you to do that, you can't wait until the eve of trial, the morning of trial, the minute of trial, and come into court and ask for time to get a new lawyer."

The court denied the defendant's request for a continuance. The defendant subsequently requested to represent herself and dismissed her attorney. After thoroughly canvassing the defendant on her ability and competence to represent herself adequately,[4] the court concluded that she had "knowingly, voluntarily and

___

[3] "Almost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal . . . . On the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the *trial court,* rather than by those of his counsel." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Parrott,* 262 Conn. 276, 285, 811 A.2d 705 (2003). Because the defendant is claiming that the court violated her right to the effective assistance of counsel, her claim is properly before this court.

[4] At trial, the defendant indicated that she was a third year law student and stated before this court at oral argument that she was "seven credits from obtaining [her] law degree and fully competent to argue [her] appeal."

understandingly" waived her right to counsel. The court, however, told Rivera to serve as standby counsel during the trial.

"Our review of a trial court's decision to grant or deny a continuance is limited to whether the court abused its discretion. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary. . . . We must afford the trial court every reasonable presumption in favor of the proper exercise of its discretion." (Citations omitted.) *State* v. *Bradley*, 39 Conn. App. 82, 87, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Internal quotation marks omitted.) *Catalano* v. *Falco*, 74 Conn. App. 86, 91, 812 A.2d 63 (2002).

On the basis of our review of the record, the court did not abuse its discretion in denying the defendant's motion for a continuance to seek new counsel. "A defendant has no unbridled right to discharge counsel *on the eve of trial.* . . . In order to work a delay by a last minute discharge of counsel there must exist exceptional circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993). "Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. . . . Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned." (Internal quotation marks omitted.) *State* v. *Bradley*, supra, 39 Conn. App. 87–88.

In this case, the defendant had ample time, prior to the start of trial, to hire new counsel if she believed that the attorney-client relationship had broken down. Instead, she waited until the day of trial to express her

dissatisfaction with her counsel. We therefore conclude that the court did not abuse its discretion in denying the defendant's motion for a continuance.

## II

The defendant's second claim is that the court improperly admitted hearsay into evidence. Specifically, the defendant argues that the exhibits introduced by the state were inadmissible hearsay.[5] She further argues that the court improperly allowed the state's witnesses to offer hearsay testimony. We disagree.

"A trial court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only if a clear abuse of the court's discretion is shown and the defendant shows that the ruling caused substantial prejudice or injustice. . . . An appellate tribunal is required to make every reasonable presumption in favor of upholding the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *State* v. *Bryant*, 61 Conn. App. 565, 573, 767 A.2d 166 (2001). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless an exception to the hearsay rule applies. See *State* v. *Stepney*, 191 Conn. 233, 249, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984).

## A

At trial, the state offered the testimony of the deputy chief clerk of the judicial district of New Haven, Louis P. Fagnani, Jr., who identified the state's exhibit one as a copy of a protective order and described the nature

---

[5] The state introduced the following five exhibits at trial: Exhibit one, the protective order; exhibit two, the envelope containing the sixteen page document that the defendant had mailed to her daughter; exhibit three, the April 3, 2001 transcript of the court proceedings before Judge Alexander; and exhibits four and five, portions of the April 3, 2001 transcript.

of the protective order, when it was issued and where the record was kept. The defendant objected to that line of questioning on the ground that it was "hearsay because the judge that signed it [was] not here to identify it, and Mr. Fagnani did not sign it."

The state argues, and we agree, that even if the document was hearsay, it was properly admitted under the public records exception to the hearsay rule.[6] "The public records exception to the hearsay rule is based upon the fact that the [record] of the public official can be relied upon for its trustworthiness. The public official may act only occasionally, but when he does act he knows and feels that he is acting under the sanction of his official place. Experience has led to the conclusion that it is ordinarily safe to rely upon the trustworthiness of a [record] made under such circumstances." (Internal quotation marks omitted.) *Lawrence* v. *Kozlowski*, 171 Conn. 705, 718 n.10, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); see also *State* v. *Torello*, 103 Conn. 511, 519–20, 131 A. 429 (1925). Additionally, the protective order was authenticated properly before it was offered as an exhibit. "[I]t is generally recognized that public documents can be authenticated simply by showing [that] the record purports to be a public record and comes from the custody of the proper public office." (Internal quotation marks omitted.) C. Tait, Connecticut Evidence (3d Ed. 2001) § 9.4.2, pp. 757–58. Under those circumstances, the court did not abuse its discretion in admitting the protective order.

---

[6] Connecticut Code of Evidence § 8-3 (7) excludes the following from the hearsay rule: "Records, reports, statements or data compilations, in any form, of public offices or agencies, provided (A) the record, report, statement or data compilation was made by a public official under a duty to make it, (B) the record, report, statement or data compilation was made in the course of his or her official duties, and (C) the official or someone with a duty to transmit information to the official had personal knowledge of the matters contained in the record, report, statement or data compilation."

In another portion of her brief, the defendant contends that Fagnani's testimony about the procedures used in court on the issuance of a protective order was "hearsay because he was not present . . . at the time the alleged document was given to the defendant." Here, the court properly overruled the defendant's objection with regard to Fagnani's testimony. Fagnani was not testifying about an out-of-court statement made by the judge; rather, he was simply describing the general practice regarding protective orders issued in court, a matter with which he was well acquainted and, thus, about which he was qualified to testify. Accordingly, the court did not abuse its discretion because the testimony was not hearsay.

## B

The defendant contends that the envelope and the sixteen page document it contained, introduced by the state as exhibit two, were inadmissible hearsay. The envelope was addressed to the defendant's daughter, bearing the defendant's name and return address. The state called the daughter, who testified that after receiving the document in the mail, she contacted the police. The defendant's claim that the document is hearsay lacks merit.

As previously stated, "an out-of-court statement offered to prove the truth of the matter asserted is hearsay. . . . If such a statement [however] is offered for a purpose other than establishing the truth of the matters contained in the statement, it is not hearsay." (Citation omitted.) *State* v. *Esposito*, 223 Conn. 299, 315, 613 A.2d 242 (1992). The state did not offer exhibit two for its contents, but rather to prove that the defendant had violated the "no contact" provision of the protective order by communicating with her daughter through the mail. The contents of the document were not offered as evidence of the crime. The fact that it

was mailed at all was the element of the violation of the protective order that the state sought to prove. Here, it was necessary that the state prove only a general intent that the defendant intended to perform the activity that constituted the violation. See *State* v. *Charles*, 78 Conn. App. 125, 140, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003). In the defendant's case, mailing the envelope was sufficient. The nature of the contents of the envelope was irrelevant. As such, the court did not abuse its discretion in admitting the document.

## C

The defendant contends that the court improperly admitted into evidence a four page transcript of the court proceedings before Judge Alexander and excerpts of that transcript to prove the truth of Judge Alexander's statements, even though the judge was not present at trial. Our review of the record reveals that the four page transcript was not placed into evidence, but was marked for identification only. Excerpts of the transcripts, however, were introduced as full exhibits, and we will consider the claim as it relates to the excerpts only. See footnote 2.

The excerpts of the transcript introduced at trial concerned the colloquy between Judge Alexander and the defendant, at which time the defendant admitted that she understood the terms of the protective order. The defendant claims that the statements made by the court were hearsay. We disagree. The court made the statements to put the defendant on notice of what the "no contact" order meant, and the statements constituted verbal acts that simply were not hearsay. See *Gyro Brass Mfg. Corp.* v. *United Automobile, Aircraft & Agricultural Implement Workers of America, AFL-CIO*, 147 Conn. 76, 80, 157 A.2d 241 (1959) (testimony about oral modification of sales agreement was admissi-

ble nonhearsay because testimony offered to prove only that utterance was made, not for truth of any statements within utterance); *State* v. *Tolisano*, 136 Conn. 210, 214, 70 A.2d 118 (1949) (statements by anonymous callers to suspected bookie's apartment admissible because statements offered not for truth of their content but as proof of verbal act of placing bet).

Although the excerpts that contained the defendant's response, "Yes, Your Honor," were hearsay statements, we conclude that they were admissible because the defendant's response to the court was an admission that she understood the scope of the protective order. "It is an elementary rule of evidence that an admission of a party may be entered into evidence as an exception to the hearsay rule. . . . [S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . so long as they are relevant and material to issues in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 357–58, 796 A.2d 1118 (2002). Here, the excerpts referred only to the court's canvass and the defendant's response that she understood the requirements of the protective order, which she later violated. Judge Alexander explained to the defendant that the "no contact" provision of the protective order meant that she could not mail anything to her daughter. The defendant stated that she understood the judge's order. The portion of the transcripts referring to the defendant's response to the court was offered for the truth of the facts contained in the statement that the defendant understood that the protective order prohibited her from mailing anything to her daughter. The state also offered the excerpts to prove that the defendant's claim that she did not have notice of the order's scope was disingenuous at best. See part V of this opinion. Accordingly, the court did not abuse its discretion in admitting the excerpts into evidence.

D

The defendant contends that on the basis of her hearsay objection, the testimony from the state's witnesses, Hosey and an assistant state's attorney, Maura K. Coyne, should not have been admitted. We disagree.

During direct examination, the defendant objected to Hosey's answer that he believed that the defendant was subsequently arrested for a violation of a protective order. The defendant claimed that because Hosey was not the arresting officer, his answer should be stricken because it was hearsay. Any error in admitting the testimony was harmless because there was no dispute that the defendant was arrested on the charge of violating the protective order. The court therefore did not abuse its discretion in admitting Hosey's testimony.

The state also called Coyne, who testified about the substance of the protective order that was issued by Judge Alexander. The defendant objected to that testimony as hearsay. The state argues that if Coyne's testimony was admitted improperly, it was harmless because she had referred to the protective order, which already had been admitted into evidence properly. "It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." *Swenson* v. *Sawoska*, 215 Conn. 148, 155, 575 A.2d 206 (1990). Upon review, the record reveals that the substance of what the defendant claims was improperly admitted testimony merely was cumulative of other validly admitted evidence. We conclude that it was harmless error and, therefore, unlikely to have affected the outcome of the trial.

E

The state called Jessica Roman, a court recording monitor, to authenticate excerpts from the April 3, 2001,

transcript. On appeal, the defendant claims that the court improperly admitted Roman's testimony. The defendant did not raise any hearsay objections during the state's examination of Roman and, thus, did not preserve the claim. When the defendant has failed to preserve the issue properly by raising it before the trial court, we decline to review the claim. *State* v. *Hathaway*, 78 Conn. App. 527, 532 n.4, 827 A.2d 780, cert. denied, 266 Conn. 909, 832 A.2d 73 (2003).

## III

The defendant's third claim is that her daughter was incompetent to testify. Specifically, the defendant argues that the court improperly (1) sustained the state's objection to her proffer of a Probate Court order requiring her daughter to seek counseling[7] and (2) denied her motion to order her daughter to undergo a competency evaluation prior to testifying in the state's case-in-chief.[8] We disagree.

The defendant argues that because her daughter had been ordered into counseling at approximately the same time that the court entered the protective order, there

[7] The defendant has included in the appendix to her brief a copy of the probate order that required her daughter to see a counselor. During the trial, the defendant failed to make that document an exhibit for identification purposes. Therefore, the document was not properly before this court for review. See *State* v. *Harrison*, 34 Conn. App. 473, 490, 642 A.2d 36 ("purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review" [internal quotation marks omitted]), cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). Because the defendant failed to provide an adequate record for our review of her evidentiary claim, we decline to afford it review.

[8] In her brief, the defendant relied on *United States* v. *Partin*, 493 F.2d 750 (5th Cir. 1974), in seeking plain error review of her claim and arguing that she has "the right to explore every facet of relevant evidence pertaining to the credibility of those who testify against" her. (Internal quotation marks omitted.) Id., 763. Plain error review is reserved for extraordinary situations. *State* v. *Beverly*, 72 Conn. App. 91, 104–105, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002). This is not the case here. Plain error review therefore is unwarranted.

was a basis for a competency evaluation because her daughter's mental condition was put in issue. The defendant asserts that her daughter was the primary witness against her and that a full evaluation was necessary for adequate cross-examination. We are not persuaded.

"The competency of a witness is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or some error in law." (Internal quotation marks omitted.) *State v. Morant*, 242 Conn. 666, 677, 701 A.2d 1 (1997). "Our case law demonstrates that the drastic measure of ordering a psychiatric examination . . . should be taken only upon compelling reasons. . . . Such an examination should not be ordered if the trial court, after hearing the testimony of the witness, has no doubt of [the witness'] mental soundness. . . . In making such a determination, the trial court may make use of its own observations of the witness." (Citations omitted; internal quotation marks omitted.) Id., 679.

Here, the court had an opportunity to observe the daughter's demeanor and ability to testify, as well as to hear the substance of her testimony to determine her competence as a witness. The daughter was able to recall and to testify appropriately. She was a college student who understood the questions as well as the oath that was administered to her. Her testimony was important but was not the sole evidence against the defendant. Court records and the testimony proffered by the witnesses were central to proving a violation of a criminal protective order. On the basis of our review, there is nothing in the record to indicate that the court abused its discretion in declining to order an evaluation to determine whether the defendant's daughter was competent to testify. Accordingly, the court did not abuse its discretion in denying the motion for a competency evaluation.

## IV

The defendant's fourth claim is that the court denied her constitutional rights to confront and to cross-examine the witnesses against her and to present an adequate defense. We disagree. Those claims are evidentiary in nature,[9] and we will review them on that basis.

The defendant argues that she was not allowed to cross-examine her daughter regarding the substance of the documents the defendant had mailed to her.[10] She further contends that she was denied her right to put other documents into evidence,[11] to call witnesses on her behalf and to give unrestricted testimony[12] if she chose to testify. The court properly excluded the proffered evidence, as it was irrelevant to the charge against the defendant.

"The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . The proffering party bears the burden of establishing the relevance of the offered testimony."

---

[9] "It is well established that [r]obing garden variety claims of [an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature." (Internal quotation marks omitted.) *State* v. *William C.*, 71 Conn. App. 47, 71 n.12; 801 A.2d 823, rev'd on other grounds, 267 Conn. 686, 841 A.2d 1144 (2004).

[10] The envelope contained a document referring to an appeal from a Probate Court proceeding during which the defendant unsuccessfully attempted to become her daughter's temporary conservator.

[11] The defendant wanted to introduce the following into evidence: A one page document entitled "Motion for Appeal from Probate," a letter from her daughter's Probate Court attorney to the Probate Court judge pertaining to her daughter's counseling, the employment records of the defendant's ex-husband and an offer of proof regarding proposed testimony from her son.

[12] The defendant wanted to testify about her daughter's mental competency, her relationship with her daughter and her daughter's relationship with her father. The defendant chose not to testify after the court warned her that her testimony would be limited to the scope of the crime charged.

(Citations omitted; internal quotation marks omitted.) *State* v. *Reeves*, 57 Conn. App. 337, 345, 748 A.2d 357 (2000). The proffered testimony was collateral to the issues in this criminal case. A retrial of the ongoing family dispute would have been irrelevant and would not have aided the trier of fact in determining the challenged issue. See *State* v. *Cepeda*, 51 Conn. App. 409, 416, 723 A.2d 331 ("'[o]nly relevant evidence may be elicited through cross-examination' "), cert. denied, 248 Conn. 912, 732 A.2d 180 (1999).

"A defendant's right to cross-examine witnesses is not absolute and is subject to reasonable limitation." *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985). "Although the constitutional right of cross-examination guarantees the opportunity for effective cross-examination . . . that does not mean cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . That right does not include, in a word, unrestricted cross-examination." (Citation omitted; internal quotation marks omitted.) *State* v. *Jones*, 60 Conn. App. 866, 871, 761 A.2d 789 (2000), cert. denied, 255 Conn. 942, 769 A.2d 59 (2001).

We conclude that the court did not abuse its discretion in limiting the defendant's cross-examination or in ruling that the evidence offered by the defendant was inadmissible. The defendant's questioning and proffered evidence had no bearing on the charge of a violation of a protective order, and the defendant failed to demonstrate otherwise. On the basis of the foregoing, the court's evidentiary rulings were proper.

V

The defendant's final claim concerns whether she had proper notice of what acts constituted a violation of the protective order. The claim implies that the state failed to inform her of the basis of the charge of violating the protective order because the "no contact" provision

of the protective order was impermissibly vague. That claim has no merit.

The defendant argues that the protective order failed to put her on notice that the act of mailing her daughter the documents from the Probate Court constituted a violation of the protective order. Although the protective order that was entered into evidence as exhibit one did not state that the defendant could not mail anything to her daughter, Judge Alexander pointedly told the defendant that "no contact" meant that she was not permitted to contact her daughter "in person, by phone, *by letter* or by sending anyone on your behalf." (Emphasis added.) See part II C of this opinion.

In determining whether the "no contact" provision provided definite notice of prohibited conduct, we consider "whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." (Internal quotation marks omitted.) *State* v. *Edelman*, 64 Conn. App. 480, 485, 780 A.2d 980 (2001), appeal dismissed, 262 Conn. 392, 815 A.2d 104 (2003). On the basis of Judge Alexander's explanation of the "no contact" provision of the protective order, a person of ordinary intelligence would have understood that sending mail to a person protected by the order would violate that "no contact" provision of the protective order. Under those circumstances, the defendant had fair warning that she would violate the "no contact" provision of the protective order by sending mail to her daughter.

We agree with the defendant that nothing in the protective order or Judge Alexander's explanation of the "no contact" provision informed the defendant that the content of the Probate Court documents violated the protective order. The nature of the contents of the court documents, however, was not at issue. As previously

noted, Judge Alexander told the defendant that she could have no contact with her daughter and that no contact included not mailing *anything* to her. The defendant, nevertheless, violated the protective order by mailing the Probate Court documents to her daughter.

The defendant's brief also implies that nothing in the protective order gave her notice that exercising her right to access the Probate Court was a violation of the "no contact" provision. Yet again, the defendant failed to grasp the nature of the charge against her. She was charged with violating the protective order because she mailed the document to her daughter, not because she exercised her right to access the Probate Court. We therefore cannot conclude that the defendant did not receive proper notice of the charge against her. Accordingly, there was no due process violation, and the defendant was on notice that she could not mail anything to her daughter. The defendant's final claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.