******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FLYNN, J., concurring and dissenting. I write separately because I respectfully dissent from part I of the majority opinion. I disagree that the evidence was sufficient to show that each of the three weapons stolen was operable at the time of the theft. I therefore would reverse the defendant's conviction of the three counts of stealing a firearm in violation of General Statutes § 53a-212 (a). I concur in both the reasoning and result reached in parts II and III of the majority opinion.

The defendant was charged in three separate counts of the information with stealing a firearm in violation of § 53a-212 (a). An element of § 53a-212 (a) requires that the stolen instrumentality be a firearm, as defined by General Statutes § 53a-3 (19). *State* v. *Sherman*, 127 Conn. App. 377, 395, 13 A.3d 1138 (2011), cert. denied, 330 Conn. 936, 195 A.3d 385 (2018). Pursuant to this definition of "[f]irearm," the weapon must be one "from which a shot may be discharged . . . ." General Statutes § 53a-3 (19). Thus, operability is an essential element of stealing a firearm. *State* v. *Carpenter*, 19 Conn. App. 48, 59, 562 A.2d 35, cert. denied, 213 Conn. 804, 567 A.2d 834 (1989). I agree with the majority that the General Assembly, by defining firearm in such a manner that it must be operable, burdened the state to prove beyond a reasonable doubt the operability element of the crime as to each theft count charged. The state had to prove beyond a reasonable doubt that each of the three weapons, when stolen, constituted a "[f]irearm," meaning that they were operable on the date of the criminal act of taking them, not simply operable at some earlier time. See *State* v. *Bradley*, 39 Conn. App. 82, 91–92, 663 A.2d 1100 (1995), cert. denied, 236 Conn. 901, 670 A.2d 322 (1996). "[W]e presume that the legislature intends sensible results from the statutes it enacts." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 614, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). The legislature's enactment of a statutory operability requirement for violations of § 53a-212 (a) would make no sense if a weapon could be inoperable on the date of the crime involving its theft.

Where I disagree with the majority, is that in my opinion, the state has not established by sufficient evidence beyond a reasonable doubt that each of the stolen weapons was "operable" at the time stolen. Proof beyond reasonable doubt is the highest form of proof and requires more than the tipping of the scales by a preponderance of evidence. Where proof is offered by circumstantial evidence, this means that although not each fact of the circumstances needs to be proved, beyond a reasonable doubt, the cumulative force of all of the evidence must suffice to convince the jury of

each element of the crime beyond a reasonable doubt. See *State* v. *Papandrea*, 302 Conn. 340, 348–49, 26 A.3d 75 (2011). The defendant at the close of the state's case moved for a judgment of acquittal on the three counts of stealing a firearm in violation of § 53a-212 (a) because of insufficiency of the evidence.[1] The court denied the motion. The defense counsel premised his motion on the lack of evidence of any eyewitness seeing the defendant fleeing with firearms. On appeal, he now argues the evidence was insufficient to show operability of each of the stolen firearms. In *State* v. *Adams*, 225 Conn. 270, 623 A.2d 42 (1993), our Supreme Court followed the ruling of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), in holding that "any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right" and is entitled to review as the court does with "any properly preserved claim." *State* v. *Adams*, supra, 276 n.3

None of the weapons stolen was recovered and their owner, Niko Infanti (Niko), did not testify. Therefore, the state's case as to these charges was reliant on inferences to be drawn from circumstantial evidence based on: testimony of three witnesses; photographs of Niko's shotgun and case that were not stolen; a photograph of Niko's empty nightstand drawer; various photographs of Niko's bedroom depicting his bed, laundry baskets, television, and other miscellaneous items without the stolen weapons present; and Niko's firearm registrations.

One of the difficulties I see with the sufficiency of the proof in this case is that not only did the long form information fail to identify any of the three weapons stolen by manufacturer, serial number or other identifying characteristics, but the testimony elicited from witnesses referred in general to weapons owned by Niko rather than relating to individual weapons. The jury was instructed by the court: "Just to let you know, these counts are contained in one paragraph, but they have to be considered separately by you in your deliberations," which is an accurate statement of our law. Although the jury was so instructed, and some of the evidence differed as to each weapon, I do not see how the jury could weigh each weapons count separately where none of the stolen weapons counts identified the weapon charged in that particular count.

Where inferences are asked to be drawn from circumstantial evidence, the point at which inferences become too remote and venture off into the realm of impermissible speculation is largely a matter of judgment. See *State* v. *Niemeyer*, 258 Conn. 510, 518, 782 A.2d 658 (2001). The evidence as to operability in this case is a close question. In all cases where evidentiary sufficiency is an issue, however, the requirement that evidence should be given the most favorable construction

in favor of the verdict does not end the analysis. When inferences become too stretched, remote, and speculative, they cannot constitute proof beyond a reasonable doubt. See id., 518–19.

The defendant's involvement in the separate crimes of home invasion, robbery, and burglary is reprehensible. However, the United States Supreme Court has held that: "The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless." *Jackson* v. *Virginia*, supra, 443 U.S. 323. It is my opinion that the evidence in this case was insufficient to prove guilt beyond a reasonable doubt as to the element of operability regarding the three charged counts of stealing a firearm.

The crime of stealing a firearm requires, because of the statutory definition of "[f]irearm," that the weapons taken be operable at the time of the taking on April 12, 2015, not months earlier. An exhibit in evidence, state's exhibit 24, shows that Niko took possession of: a Henry Repeating Rifle Company .22 caliber rifle, serial number US089867B, over a year before the theft; a Heckler and Koch 9 millimeter pistol, serial number 129055936, eleven months before the theft; and a Savage .7 caliber bolt action rifle, serial number J135063, over nine months before the theft.[2] None of these purchases was close in time to April 12, 2015. For that reason, even if the jury credited the documentary evidence of when Niko purchased the three weapons at issue, and inferred that each such weapon probably was an operable weapon at the time purchased, it would not be sufficient to show beyond a reasonable doubt that the stolen weapons were still operable on the day they were taken.

The state elicited testimony as to Niko's general habits regarding his weapons. The testimony, however, was vague and failed to establish a temporal proximity from which the jury reasonably could infer that the general habits, to the extent that they could indicate operability, occurred and continued close enough in time to the incident so that an inference of operability would be reasonable.

First, there was evidence that Niko kept a safety on his weapons and the state asked the jury to infer that one would not keep a safety on weapons unless they were operable. This was evidence of a general habit. For an inference of operability to be drawn as to each gun's operability on the day in question, because they were left stored with a safety on, there would have to be evidence that each weapon stolen was so stored with the safety in the "on" position on the date stolen or very close in time to it.

Second, the evidence that Niko sometimes went to "training grounds" could not support an inference that all weapons stolen were operable. No additional evidence was offered, such as whether the "training

grounds" were actually a pistol range or rifle range at which weapons like those stolen could be fired; no evidence of how recently Niko went to the training grounds prior to the weapons being stolen; and no evidence of whether Niko took the stolen pistol and rifles with him. There was no further evidence as to what a training ground is or was. The jury could only speculate as to whether the training grounds had a pistol range or rifle range at which guns could be shot or whether Niko went to such a range close in time to the date of the theft.

Third, there was evidence that Niko kept the handgun in a night table near his bed in a lockbox, and the state urges the jury could infer from that fact that he must have kept it there for protection and would not have done so unless it could be fired. However, Niko's sisters, Kade and Christina, did not often go into that room nor did they say when they had last seen the handgun stored there that way in relation to the date of the crime. Kade testified that Niko "[v]ery rarely let anybody" into his bedroom and that she had not been in his room for approximately one month prior to the incident.

Additionally, there was evidence that the long guns were stored behind some cans of food in a bedroom, in what are sometimes described as bags and sometimes described as cases. The state urges that they would not have been so obscured from view or so kept in the bags or cases unless they were dangerous and unless they could be fired and, thus, were operable. In addressing the obscuration issue, I note that although Christina testified that the long guns were stored behind food cans, she testified that prior to the incident, she had not been in Niko's room since he had left for Arizona days earlier. Her sister, Kade, also testified that they were hidden behind cans of food. The testimony that had the closest temporal nexus came from Nathaniel Garris. Garris, who lived in the same room as Niko and occupied it on the day of the theft, however, testified as to the long guns that "[l]ike, they're not hidden," but rather "were just out, but they were in cases." He further testified that if one walked into Niko's room "you would be able to see at least three. . . . Two rifles and a shotgun." This state's evidence could not suffice to permit a finding of operability on the basis of obscuration.[3]

The testimony at trial variously describes the containers in which the guns were stored as bags or cases. That disparity in description is problematic in itself. However, the state argues that the jury could permissibly draw an inference from testimony that these containers were locked that they were, in effect, dangerous and therefore operable. However, there is no evidence that somehow bags could be locked. In my opinion, the jury could not permissibly have drawn an inference from the testimony that these containers were locked. A photograph of a similar bag, which had housed the

shotgun not stolen, introduced into evidence did not have a lock on it.

The state maintains that the circumstantial evidence, the cumulative force of which given the most favorable construction in support of the verdict as the law requires, permitted a finding beyond a reasonable doubt that the guns were operable on the day they were stolen. However, the cases decided on the basis of circumstantial evidence that stolen weapons were operable at the time of their theft generally permit a finding by the jury that that close temporal operability connection exists because it links the evidence of operability to the time of the robbery of the weapons. For example, witness testimony that an explosive bang was heard at the time of the incident, testimony from ballistic experts who, shortly after a crime, successfully fire a weapon seized, or other evidence showing the link between the operability of the weapon that the statute requires at the time of the theft. See, e.g., *State* v. *Rogers*, 50 Conn. App. 467, 469, 475, 718 A.2d 985, cert. denied, 247 Conn. 942, 723 A.2d 319 (1998) (sufficient evidence of operability where front passenger displayed gun and witness saw gunfire from passenger seat area); *State* v. *Bradley*, supra, 39 Conn. App. 91 (firearm operable when tested three days after defendant possessed it); *State* v. *Hopes*, 26 Conn. App. 367, 377, 602 A.2d 23 (jury could infer operability from evidence that nearby witnesses heard gunshots and felt something pass by them), cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). In the present case, the evidence was too vague and remote in time from the theft to provide the jury with any reasonable basis on which to infer operability at the time of the theft.

For all of these reasons, I do not believe, that from the evidence before it, the jury could logically infer beyond a reasonable doubt that the stolen weapons were operable at the time they were stolen. Accordingly, I would reverse the conviction of the three counts of stealing a firearm in violation of § 53a-212 (a).

[1] Practice Book § 42-40 expressly provides that a defendant may do so, as it states in relevant part: "After the close of the prosecution's case-in-chief or at the close of all the evidence, upon motion of the defendant or upon its own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged . . . for which the evidence would not reasonably permit a finding of guilty. . . ."

[2] The exhibit also gave details for the shotgun, which was not stolen.

[3] While in Niko's room, the defendant saw a gun case or bag and asked if it was a guitar case. The defendant was able to see the long guns well enough in Niko's room to locate and remove them.