******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARK A. TENAY
(AC 35045)

Gruendel, Robinson and Alvord, Js.*

*Argued November 18, 2013—officially released May 13, 2014*

(Appeal from Superior Court, judicial district of Ansonia-Milford, geographical area number twenty-two, Keegan, J.)

*Jeremiah Donovan*, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom were *Kevin D. Lawlor*, state's attorney, and *Kevin S. Russo*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Mark A. Tenay, appeals from the judgment of conviction, rendered after a jury trial on the first part of an information, of operating a motor vehicle while under the influence of alcohol in violation of General Statutes § 14-227a (a) (1),[1] and following a trial to the court on a part B information,[2] of being a three time offender pursuant to General Statutes § 14-227a (g) (3). The defendant claims on appeal that the trial court improperly (1) excluded from evidence during the jury trial portions of certain hospital records that pertained to medical treatment that he received following his arrest; (2) admitted into evidence during the jury trial the results of a finger dexterity roadside sobriety test without first determining the scientific validity of that particular test in accordance with *State v. Porter*, 241 Conn. 57, 80–90, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998); and (3) admitted into evidence during the trial to the court on the part B information a certified copy of a case abstract detailing a Florida criminal action attributed to the defendant and a related fingerprint card. We agree with the defendant that the abstract was improperly admitted into evidence and, thus, reverse that part of the judgment finding the defendant to be a three time offender under § 14-227a (g); we otherwise affirm the judgment of the trial court.[3]

The jury reasonably could have found the following facts. Early in the morning of April 18, 2009, Officer Jeffrey Nelson of the Milford Police Department was dispatched to Naugatuck Avenue, where he observed a brown Jeep Cherokee with Vermont license plates partially on the front lawn of 1028 Naugatuck Avenue. Additional police officers, Matthew Mello and Gillian Gallagher, later arrived at the scene. The vehicle had considerable damage. The rear bumper was hanging off of the vehicle, the passenger side of the vehicle looked to have been sideswiped, the front passenger side window was broken, and the front passenger side fender and headlight were damaged. There was no tire on the front passenger side of the vehicle, and a gouge in the pavement, which extended back from the scene approximately one mile to the off ramp of Interstate 95, indicated that the vehicle had traveled for a considerable distance on its rim without the tire.

When Nelson arrived, the defendant was seated in the driver's seat of the vehicle with the door open. He was confused and disoriented. His eyes had a glassy appearance, and he smelled strongly of alcohol. When Nelson inquired about the condition of the vehicle, the defendant responded that he may have struck a curb a couple of blocks away, although the damage to the vehicle did not support that scenario. The defendant later indicated that he may have struck a mailbox or something else. Nelson had to repeat his request for the

defendant's driver's license, registration and insurance card a few times before the defendant complied.

On the basis of initial observations, the defendant was asked to perform certain field sobriety tests: the alphabet test, the walk and turn test, the one leg stand test, the horizontal gaze nystagmus test, and the finger dexterity test. Nelson first asked the defendant to perform the alphabet test, which required him to recite the alphabet from A to Z. The defendant responded that he was "not good" at reciting the alphabet because his first grade teacher had passed away in the middle of the school year, and, thus, he never learned to recite the alphabet properly. He nevertheless agreed to try. He could only recite the letters A through K, the latter which he pronounced as "key," following which he recited, in order, the letters E, M and F.

Nelson next indicated that he was going to have the defendant perform a walk and turn test.[4] Before Nelson could explain to the defendant what the test entailed, the defendant indicated that he would be unable to perform the test because of existing knee problems. Nelson instructed the defendant that he did not have to place the toe of one foot against the heel of the other as is usually required, but could keep them somewhat apart. Even with that accommodation, however, the defendant failed the test. He walked nine steps forward and nine steps back, but counted fourteen steps, failed to keep his balance and stepped off of the line. The defendant refused to take the one leg stand test when asked by Nelson.[5]

Mello then conducted the horizontal gaze nystagmus test.[6] Although Mello instructed the defendant to keep his head straight and only move his eyes, the defendant was not able to comply and moved his head. At the maximum deviation point, the defendant's eyes were "bouncing," which was a strong indicator that he was intoxicated.

Mello also conducted the finger dexterity test. The finger dexterity test requires the subject to count the fingers of one hand by using the thumb to move forward and back, touching the tips of the fingers starting with the index finger, while counting out loud from one to four and then backward from four to one. The defendant failed the test because he performed the required tasks very slowly, he had to concentrate on his hands and focus on counting, and he swayed and lost his balance while performing the test.

Having failed to perform adequately any of the roadside sobriety tests administered to him, the defendant was arrested for operating his motor vehicle while under the influence, and he was transported to the Milford Police Department. While at the police department, the defendant refused to take a breathalyzer or a urine test to determine his blood alcohol content. The

defendant was given a summons and released. The next day, he reported for medical treatment to the emergency room at Yale-New Haven Hospital. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court erred in redacting portions of medical records that he sought to introduce as full exhibits during the jury trial. The medical records at issue pertain to treatment the defendant received after his arrest. The defendant argues that the medical records in their unredacted form were necessary to his defense because they tended to show his physical and mental condition at the time leading up to his arrest, and, in so doing, supported an alternative explanation for his behavior and why he failed the field sobriety tests. The state argues that the defendant's evidentiary claim fails because the court did not wholly exclude the proffered records, but merely redacted certain portions that either were irrelevant, constituted inadmissible hearsay, or would have confused the jury without some further explanation from a witness.[7] The state also argues that the defendant has failed to prove that he was harmed by the court's redactions. We agree with the state that the court did not abuse its discretion in redacting portions of the proffered medical records.

The following additional facts and procedural history are relevant to the present claim. Prior to the state resting its case, the defendant sought to make an offer of proof regarding medical records that he had subpoenaed from Yale-New Haven Hospital and that he wanted to introduce to the jury as full exhibits without a witness.[8] The defendant wanted a ruling from the court on the admissibility of the medical records prior to his deciding whether to testify on his own behalf.

The medical records at issue consist of four reports dated April 21, April 27, April 30 and May 11, 2009—each memorializing a follow-up visit that the defendant had after his initial treatment in the hospital's emergency room on April 19, 2009—and an operative report detailing a knee surgery that the defendant underwent on July 29, 2009. When the court inquired as to the relevancy of the records, the defendant argued that the records would show that he had visited the emergency room the day after the incident and that he had complained of problems with his left knee, which ultimately required surgery. According to the defendant, such evidence supported his defense theory that his knee impairment, and not his intoxication, had prevented him from properly executing the walk and turn test and from taking the one leg stand test. The defendant also argued that the records indicated that he had suffered a cervical strain and was provided with a cervical collar, which, the defendant argued, was relevant to show that there had been "some collision that caused the defen-

dant's body to be thrown about."

The state objected to the proffered medical records being introduced as full exhibits. It argued that the medical records contained little relevant information. It also argued that they were replete with inadmissible hearsay in that they contained the authoring doctor's recitation of statements the defendant had made with regard to the defendant's medical history and to events that transpired prior to his arrest. Finally, the state argued that, without a witness, the records, which contained the defendant's self-reporting of a history of concussions and blackouts, could mislead the jury into believing that they were actual clinical diagnoses by the treating physician.

In response to the state's relevancy argument, defense counsel stated that he was "not necessarily claiming the entire document," and indicated some willingness to redact portions of the documents. As to the state's hearsay arguments, defense counsel argued that he believed that the defendant's statements could come in under an exception to the hearsay rule for statements made for the provision of medical services.[9] The defendant did not directly respond to the state's argument that the records contained information that could mislead the jury without an explanatory witness.

After taking a brief recess to review the documents further, the court, *Keegan, J.*, ruled on the record as follows: "[T]he majority of the documents are not relevant to the issues that the jury has to decide in this trial, namely, whether or not on the [day in] question [the defendant] was recklessly operating a motor vehicle, while under the influence of intoxicating liquors, or any drugs, or both." The court also noted that "these records are confusing without a witness to explain the records." The court concluded that it would "order a redaction of certain records to permit [the defendant] to introduce the records with respect to the fact that he had reported prior knee surgeries, and that he had a knee surgery in July of 2009." The court also indicated that it would do the redactions during the next break. The defendant stated for the record that he disagreed with the court's decision to have the documents redacted. The court later further clarified its evidentiary ruling, stating that "[t]he court finds that only any complaint of the injury to the knee is relevant to the defendant's claims about his ability to perform the roadside sobriety tests. So, that's the part that the court would allow in, and we do need to redact the records for that." The court later provided the parties with copies of the redacted versions of the documents. Defense counsel offered the redacted versions for admission as full exhibits at the start of the defendant's case, and they were admitted without further objections.

We begin with the standard of review that governs our consideration of the defendant's evidentiary claim.

"It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Furthermore, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion. . . . In a criminal case, an improper evidentiary ruling by the trial court is harmless if the reviewing court has a fair assurance that the error did not substantially affect the jury's verdict." (Citation omitted; internal quotation marks omitted.) *State* v. *Williams*, 146 Conn. App. 114, 124, 75 A.3d 668, cert. granted on other grounds, 310 Conn. 959, 82 A.3d 626 (2013).

"[I]f an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Longo*, 106 Conn. App. 701, 708, 943 A.2d 488 (2008). "To the extent [that] a trial court's admission [or exclusion] of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary." (Internal quotation marks omitted.) *State* v. *Annulli*, 130 Conn. App. 571, 579–80, 23 A.3d 808 (2011), aff'd, 309 Conn. 482, 71 A.3d 530 (2013).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." (Internal quotation marks omitted.) *State* v. *Thomas*, 110 Conn. App. 708, 716, 955 A.2d 1222, cert. denied, 289 Conn. 952, 961 A.2d 418 (2008). "A clear statement of the defendant's theory of relevance is all important in determining whether the evidence is offered for a permissible purpose. . . . Ordinarily, we will not consider a theory of relevance that was not raised before the trial court." (Internal quotation marks omitted.) *State* v. *Crespo*, 114 Conn. App. 346, 366, 969 A.2d 231 (2009), aff'd, 303 Conn. 589, 35 A.3d 243 (2012). "While relevant evidence is generally admissible, the trial judge has a certain amount of discretion in excluding such evidence; matters likely to mislead a jury, or to be misused by it, or to unnecessarily complicate a case, or of slight, remote, or conjectural significance, ought not to be admitted." (Internal quotation marks omitted.) *State* v. *Gooch*, 186 Conn. 17, 23, 438 A.2d 867 (1982). Thus, even potentially relevant evidence properly may be excluded if its probative value is outweighed by the danger of misleading the jury.

When asked at trial to explain the relevancy of the proffered medical records, the defendant argued that

the records showed that he had reported to the emergency room shortly after the incident leading to his arrest complaining of problems with his left knee, and that he ultimately required surgery to correct the problems with the knee. According to the defendant, evidence of the knee injury was relevant because it supported his theory of defense "that [he] had a medical condition that would, at least, with respect to the walk and turn and the one leg stand [tests], at least, impede his ability to perform those tests, as a result of that condition." When the court asked if there was anything else the defendant wanted to argue with respect to relevancy, the defendant mentioned that the records also indicated that he had suffered a cervical strain and was given a cervical collar, which he argued tended to support the notion that there had been some serious collision prior to his arrest. The defendant never explained to the court how evidence of a serious collision would aid the jury in its consideration of whether the defendant had been intoxicated while operating the vehicle or in resolving any other issue properly before the jury.[10]

The defendant also mentioned to the court that the records "contained a discussion about positive amnesia that the defendant suffered," and also indicated self-reported, "subtle blackout type episodes." The defendant did not explain the significance of that evidence, and, when the court indicated that it did not know what the term "positive amnesia" meant, the defendant immediately returned to a discussion of his knee injury.

On the basis of our review of the record, we conclude that the only theory of relevancy offered by the defendant to the court at the time the court ruled on the admissibility of the medical records pertained to the knee injury evidence. The court ruled that it would allow the records in as a full exhibit with respect to evidence concerning the defendant's knee injury. The rationale given by the court for redacting other portions of the records was that they contained material that was not relevant and that might mislead the jury without further explanation. That rationale is fully supported by the record. The defendant has failed to establish that the court abused its discretion in admitting only the redacted versions of the proffered medical records, and, accordingly his claim to the contrary fails.

II

The defendant next claims that the court abused its discretion by admitting testimony regarding the defendant's failure to pass the finger dexterity test without first determining whether that test is scientifically valid pursuant to *Porter*. We disagree.

The following additional facts are relevant to our resolution of this claim. The state called Mello to testify about the two field sobriety tests that he administered

to the defendant. Mello first testified, without objection, about administering the horizontal gaze nystagmus test to the defendant, and the results he observed. When the state asked Mello whether he had administered another test, defense counsel indicated that he had an objection that should be heard outside the presence of the jury. The jury was excused, after which defense counsel indicated that he objected to any testimony from Mello regarding the finger dexterity test without the state first making an offer of proof that the test satisfies the criteria for admissibility of scientific evidence as set forth in *Porter*. Defense counsel argued that although he was aware of literature from the National Highway Traffic Safety Administration validating the use of the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test as standard field sobriety tests, he knew of no such scientific validation with regard to the finger dexterity test.

In response to questions from the court, Mello indicated that although the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test are the three standard field sobriety tests, the police also employ other tests capable of gauging a person's motor skills and hand-eye coordination, such as the finger dexterity test. With respect to the finger dexterity test, Mello explained that if a person was under the influence, they might either miss touching a finger or count incorrectly. The state argued that it believed that the defense's objection pertained more to the weight of the evidence, not to its admissibility.

The court ruled as follows: "Well, as to whether or not a *Porter* hearing is necessary on finger dexterity, based on what the officer has said, it doesn't sound scientific at all. It sounds no different to the walk and turn, which is to see whether or not the person can exhibit dexterity and count at the same time, as an indicator as to whether or not, you know, that could be used as a factor—to make a determination as to whether a person is intoxicated or not. So, because it sounds so similar to the walk and turn, using fingers instead of feet, the [c]ourt feels that it is admissible under the same standards that the walk and turn is admissible." Defense counsel noted his objection for the record.[11]

The jury was brought back to the courtroom. In response to questions from the state, Mello explained to the jury what the finger dexterity test entailed, noting that the test allowed officers "to observe an individual at a normal task that they should be able to complete if they're not under the influence of drugs or alcohol." When he was asked to describe the defendant's results, Mello testified: "He was very slow, concentrating on his hands, focusing on counting. Also, while doing that, he was swaying. That's another indication. Someone who's under the influence, when you ask them to do

normal tasks, sometimes other natural motor skills will start to fade away. At, which, at the time he was doing that, he started swaying, as if he was losing his balance." On the basis of his observations and experience, Mello determined that the defendant had failed the test.

"In *Porter*, this court followed the United States Supreme Court's decision in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and held that scientific evidence should be subjected to a flexible test, with differing factors that are applied on a case-by-case basis, to determine the reliability of the scientific evidence. . . . Following [*Porter*], scientific evidence, and expert testimony based thereon, usually is to be evaluated under a threshold admissibility standard assessing the reliability of the methodology underlying the evidence and whether the evidence at issue is, in fact, derived from and based upon that methodology . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *West*, 274 Conn. 605, 630, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

Nevertheless, "certain types of evidence, although ostensibly rooted in scientific principles and presented by expert witnesses with scientific training, are not scientific for . . . purposes of our admissibility standard for scientific evidence, either before or after *Porter* [was decided]. . . . Thus, even evidence with its roots in scientific principles, which is within the comprehension of the average juror and which allows the jury to make its own conclusions based on its independent powers of observation and physical comparison, and without heavy reliance upon the testimony of an expert witness, need not be considered scientific in nature for . . . purposes of evidentiary admissibility. . . . [E]vidence . . . which merely places a jury . . . in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge . . . is not the type of scientific evidence within the contemplation of *Porter*, and similarly was not within the ambit of our standard for assessing scientific evidence prior to *Porter*." (Citations omitted; internal quotation marks omitted.) Id., 631.

This court previously has concluded that, unlike the horizontal gaze nystagmus test, field sobriety tests like the walk and turn test and the one leg stand test, which "probe an individual's sense of balance, his coordination and his abilities to comprehend and follow instructions," are within the common knowledge of lay jurors, and, thus, do not constitute scientific evidence. *State* v. *Merritt*, 36 Conn. App. 76, 90–91, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995). Such tests are not highly technical, nor do they require special skills or knowledge to be understood. See *State*

v. *Gracia*, 51 Conn. App. 4, 19, 719 A.2d 1196 (1998).

The court in the present case ruled that, like the walk and turn test, the finger dexterity test was not scientific evidence. It based that decision on the testimony of Mello that the finger dexterity test was used to evaluate a person's motor skills and hand-eye coordination. The court correctly reasoned that the finger dexterity test, like the walk and turn test, required a test subject to demonstrate coordination while counting at the same time. The jury required no special skills or knowledge to evaluate the observational evidence provided by Mello of the defendant's performance. The court did not err in determining that, like the walk and turn test and the one leg stand test, the finger dexterity test does not constitute scientific evidence as contemplated in *Porter*, and we reject the defendant's claim that the court abused its discretion in admitting Mello's testimony regarding the finger dexterity test without first conducting a *Porter* hearing.

### III

The defendant next claims that the court improperly admitted into evidence during the part B trial a copy of a criminal case abstract obtained from a court clerk in Santa Rosa County, Florida (abstract), and a related fingerprint card obtained from the Santa Rosa County sheriff. The defendant argues that information on the abstract and fingerprint card was inadmissible hearsay and that the state failed to lay a proper foundation for the documents' admission under a hearsay exception for public records. We agree that the abstract was not properly admitted and that this constituted reversible error.[12]

The following additional facts and procedural history are relevant to our review of the claim. The defendant was charged in the part B information with being a repeat offender subject to an enhanced sentence pursuant to § 14-227a (g).[13] According to the information, the defendant previously had been convicted of driving a motor vehicle while under the influence in Florida in 1996 and in Connecticut in 2002. The state, therefore, had the burden of proving those prior convictions beyond a reasonable doubt.[14] To meet that burden, the state presented the testimony of Ian Shackleton, a criminal justice secretary II with the office of the state's attorney in the judicial district of Ansonia-Milford. Shackleton testified that, using parameters that included the defendant's name, date of birth, gender, race and social security number, he had conducted searches of state and federal government on-line databases for criminal and motor vehicle records with data matching those parameters. On the basis of the information that Shackleton obtained from his database searches, he contacted the court of record in Santa Rosa County, Florida, seeking a certified copy of disposition. He was referred to a county records clerk from

whom he requested the necessary record.[15]

A deputy clerk with the archives division of the Santa Rosa County Clerk of Courts sent Shackleton a certified letter explaining that because of a Florida law regarding the retention of documents, the only documentation available with respect to the requested 1996 Florida conviction was an abstract containing the case history detail. The clerk's signature was marked with a raised seal of the court. Attached to the letter was a copy of the abstract that was certified by the same clerk as a true and correct copy. In addition to docket descriptions, the abstract contained general case information. In particular, it contained entries identifying by name and address the party defendant—the name being the same as that of the defendant in the present case—and indicating, inter alia, the date the offense had occurred, the disposition, the disposition date and the sentence that was imposed. Although the abstract did not include any notation identifying the specific statutory violation at issue, amongst the docket descriptions were entries indicating that an "INFORMATION DUI" had been filed and that, following an adjudication of "GUILTY," the defendant's driver's license had been suspended, and he had been ordered to attend "DUI SCHOOL."

The defendant objected to the admission of the abstract arguing, inter alia, that it contained inadmissible hearsay and violated his constitutional rights under the confrontation clause because the person that had prepared the abstract was not available for cross-examination. The state argued that the abstract should be admitted because it was a self-authenticated public document. The court overruled all objections to the admissibility of the abstract based on the fact that the abstract was a court document certified by a clerk of the court under seal.

Generally, as set forth in part I of this opinion, a court's ruling on the admissibility of evidence is entitled to great deference and will be overturned only for a clear abuse of discretion. See *State* v. *Williams*, supra, 146 Conn. App. 124. "[T]o the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence [however], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007).

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless an exception to the hearsay rule

applies." *State* v. *Calderon*, 82 Conn. App. 315, 321, 844 A.2d 866, cert. denied, 270 Conn. 905, 853 A.2d 523, cert. denied, 543 U.S. 982, 125 S. Ct. 487, 160 L. Ed. 2d 361 (2004); see also Conn. Code Evid. § 8-2 ("[h]earsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book"). Section 8-3 (7) of the Connecticut Code of Evidence codifies our common-law hearsay exception applicable to public records and reports. Conn. Code Evid. § 8-3, commentary. "The public records exception to the hearsay rule is based upon the fact that the [record] of the public official can be relied upon for its trustworthiness. The public official may act only occasionally, but when he does act he knows and feels that he is acting under the sanction of his official place. Experience has led to the conclusion that it is ordinarily safe to rely upon the trustworthiness of a [record] made under such circumstances." (Internal quotation marks omitted.) *State* v. *Calderon*, supra, 322. "Although Connecticut has neither precisely nor consistently defined the elements comprising the common-law public records exception to the hearsay rule . . . [§] 8-3 (7) gleans from case law three distinct requirements for substantive admissibility." (Citations omitted.) Conn. Code Evid. § 8-3, commentary. Specifically, it is the burden of the party offering the evidence to show that "(A) the record, report, statement or data compilation was made by a public official under a duty to make it, (B) the record, report, statement or data compilation was made in the course of his or her official duties, and (C) the official or someone with a duty to transmit information to the official had personal knowledge of the matters contained in the record, report, statement or data compilation." Conn. Code Evid. § 8-3 (7).

"[I]t is generally recognized that public documents can be *authenticated* simply by showing [that] the record purports to be a public record and comes from the custody of the proper public office." (Emphasis added; internal quotation marks omitted.) *State* v. *Calderon*, supra, 82 Conn. App. 322, citing C. Tait, Connecticut Evidence (3d Ed. 2001) § 9.4.2, pp. 757–58. Further, General Statutes § 52-165 provides in relevant part that "[t]he entries or records of all corporations and all public offices, where entries or records are made of their acts, votes and proceedings, by some officer appointed for that purpose, may be proved by a copy certified under the hand of such officer, and the seal of such corporation or office, if any . . . . " See also Conn. Code Evid. § 9-1 (b) (no extrinsic evidence necessary "if the offered evidence is self-authenticating in accordance with applicable law"). Rules governing the authentication of documents, however, are not a proper substitute for a valid hearsay exception. See *Wright* v. *Hutt*, 50 Conn. App. 439, 446–47, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). "An official certificate simply authenticates a document, that is, it

proves that it is what it purports to be. It is not a hearsay exception that permits the contents of a certified document to be used to prove the truth of the matter asserted. Any and all assertions of fact contained within a certified document must be proven by the usual rules of evidence and must satisfy the hearsay rule or its exceptions." C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 9.12.3, p. 698.

Here, the state sought to admit the abstract as substantive evidence that the defendant had a prior conviction for driving a motor vehicle while under the influence in Florida. No argument was made at trial that the data entries on the abstract were not being admitted for the truth of the matter asserted and, thus, that the entries were not hearsay statements. Rather, in response to the defendant's objection that the information contained in the abstract was hearsay, the state argued only that the document was properly authenticated and admissible as a public record. The defendant argued to the trial court, as he does on appeal, that the state had failed to show that the foundational requirements set forth in § 8-3 (7) of the Connecticut Code of Evidence were satisfied.

The trial court ruled that because the abstract was a court document under seal and certified by the clerk of that court, the state had addressed all concerns raised by the foundational requirements in § 8-3 (7) of the Connecticut Code of Evidence. Although the seal and certification served as proof of the authenticity of the abstract, authenticity was never challenged by the defendant. The court's ruling suggests that the same elements that serve as indicia of authenticity—the seal and certification—also serve to satisfy the foundational elements set forth in § 8-3 (7) with respect to the hearsay exception for public records. We can find no legal support for that proposition in the Code of Evidence, in our statutes or in our case law.

In order to satisfy the requirements set forth in § 8-3 (7) of the Connecticut Code of Evidence, the state needed to show that the abstract was prepared by a public official under a duty to do so, that the abstract was prepared in the course of that duty, and that the official either had personal knowledge of the information contained in the abstract or the information was provided by someone with a duty to transmit that information to the official. In its appellate brief, the state addresses the lack of foundation claim by stating that it was reasonable for the court to have inferred that the foundational requirements had been met.[16] The state does not cite to any case law that directly supports the proposition that a trial court is permitted to infer evidentiary foundational requirements. Further, we do not agree that it reasonably can be inferred from either the certification or the seal that the deputy clerk who certified the abstract was the same official responsible

for its preparation, or that the deputy clerk, or someone with a duty to transmit evidence to the deputy clerk, had personal knowledge of the information contained on the abstract.

The state presented only Shackleton's testimony as a foundation for the admission of the abstract. Shackleton provided no background information about how or by whom the abstract was prepared. The state fails to point to any portion of Shackleton's testimony that could have served as a basis for the court drawing inferences that the foundational requirements of § 8-3 (7) of the Connecticut Code of Evidence had been met.

Because the state failed to meet its foundational burden for the admission of the abstract under the hearsay exception for public records, we conclude that the abstract was admitted by the court in error. In its brief, the state concedes that the abstract was the only evidence presented that proves the defendant was convicted of driving a motor vehicle under the influence in Florida, and thus, if the abstract was admitted in error, that error was not harmless. We agree. We also agree with the state, however, that because the defendant did not challenge the evidence of the Danbury conviction, there was sufficient evidence to support the allegation in the part B information that the defendant was "subject to the enhanced penalties under [§] 14-227a (g)," albeit as a second time offender. Accordingly, the judgment on the part B information is reversed only as to the court's finding that the defendant was guilty of being a third time offender based on the alleged Florida conviction.

The judgment is reversed only as to the defendant's conviction as a third time offender under the part B information and the case is remanded with direction to modify his conviction on the part B information to reflect that he is a second time offender and to resentence the defendant accordingly. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The jury also found the defendant guilty of reckless driving in violation of General Statutes § 14-222; however, he does not challenge his reckless driving conviction in the present appeal.

[2] The defendant waived his right to a jury trial on the part B information.

[3] Because we reverse the judgment of the court on the part B information on the basis of the claimed evidentiary error, we do not reach the defendant's additional claims that the court erroneously determined that the defendant previously had been convicted of violating a Florida criminal statute, Fla. Stat. § 316.193 (1999), and that the elements of that statute essentially were the same as those of General Statutes § 14-227a.

[4] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.4, 970 A.2d 108 (2009).

[5] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *State* v. *Popeleski*,

291 Conn. 769, 771 n.5, 970 A.2d 108 (2009).

[6] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009).

[7] The court did not exclude the evidence on hearsay grounds. Because we affirm the court's evidentiary ruling on the basis of the grounds stated by the court, we do not address whether the evidence contained inadmissible hearsay.

[8] The state made no objection as to the authenticity of the records.

[9] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . . A statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment." Because the court did not rule on the hearsay argument in addressing the admissibility of the medical records, that issue is not properly before us on appeal.

[10] The defendant never argued before the trial court, as he does on appeal, that evidence of his neck injury would have helped to explain his failure to adequately perform the horizontal gaze nystagmus test, and, therefore, we do not consider that argument. See *State* v. *Crespo*, supra, 114 Conn. App. 366.

[11] In addition to the *Porter* argument, defense counsel also objected to the admissibility of testimony regarding the finger dexterity test on the ground that evidence of another field sobriety test would be cumulative of other evidence supporting the officer's determination at the time of arrest that the defendant had been intoxicated, namely, that the defendant had failed the horizontal gaze nystagmus test and the walk and turn test, that he refused to participate in the one leg stand test and that he refused a breathalyzer test. The court overruled that objection, noting that the state's burden of proof was very high and that it had a right to present to the jury everything that factored into the officers' decisions at the time of the arrest. The defendant does not challenge that aspect of the court's ruling on appeal.

[12] Because our disposition of the claim with respect to the abstract is dispositive, we do not address whether the fingerprint card also was admitted in error. The defendant also argues as part of this claim that the admission of the abstract and fingerprint card violated his constitutional right to confrontation under both the federal and state constitutions, although he chose not to brief the state constitutional claim separately thus abandoning it. See *State* v. *Simpson*, 286 Conn. 634, 651 n.17, 945 A.2d 449 (2008). "This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986). Because we agree with the evidentiary aspect of the defendant's claim, we do not reach the constitutional question.

[13] General Statutes § 14-227a (g) provides in relevant part: "Any person who violates any provision of subsection (a) of this section shall . . . (2) for conviction of a second violation within ten years after a prior conviction for the same offense, (A) be fined not less than one thousand dollars or more than four thousand dollars, (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation [with statutorily described conditions]; and (3) for conviction of a third and subsequent violation within ten years after a prior conviction for the same offense, (A) be fined not less than two thousand dollars or more than eight thousand dollars, (B) be imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and sentenced to a period of probation [with statutorily described conditions], and (C) have such person's motor vehicle operator's license or nonresident operating privilege permanently revoked upon such third offense . . . . For purposes of the imposition of penalties for a . . . third and subsequent offense pursuant to this subsection, a conviction . . . in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section or section 53a-56b or 53a-60d, shall constitute a prior conviction for the same offense."

[14] It is not a "condition to the imposition of enhanced penalties for a third offense, that a defendant must have been convicted previously of being a second time offender." See *State* v. *Surette*, 90 Conn. App. 177, 181, 876 A.2d 582 (2005).

[15] The state also introduced through Shackleton documentary evidence of a 2002 conviction of operating a motor vehicle while under the influence prosecuted in the Superior Court in Danbury, including a certified copy of a judgment of conviction and a related fingerprint card. The defendant does not challenge the admissibility of that evidence on appeal.

[16] The state argues in the alternative that the court was permitted to consider hearsay evidence because it was acting as a sentencing court with respect to the part B trial. We find no merit in this argument. Sentencing cannot occur until both parts of the information have been adjudicated. See *State* v. *Jones-Richards*, 271 Conn. 115, 123, 855 A.2d 979 (2004). Adjudication of part B of an information is no less of a trial than the proceedings on the first part of the information; the state has the burden of proving a violation beyond a reasonable doubt and all evidentiary rules regarding the admission of evidence are the same.